**Emma L. Johnson et al., Appellees, v. Carl Lind, Appellant.**

**Gen. No. 6,761.**

1. BILLS AND NOTES, § 62*—*when note is executed under duress and is without consideration.* On a bill in equity to enjoin defendant from assigning, transferring or pledging a certain note and mortgage executed by complainant and her deceased husband and to have the same canceled and annulled, evidence *held* to reasonably warrant the inference that the instruments were executed by complainant's husband by reason of fear of an impending prosecution for the larceny of money which defendant charged him with having stolen, and that such note and mortgage were without consideration.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. BILLS AND NOTES, § 62*—*what is sufficient to establish duress.* Sufficient duress to avoid a note is shown by proof that it was executed under the fear of a criminal prosecution and in order to avoid such prosecution.

3. CANCELLATION OF INSTRUMENTS, § 12*—*when equity has jurisdiction because of lack of consideration and duress.* Where a note is involved which is negotiable and not due, and there is good reason to believe that it may be transferred or negotiated before maturity and thereby come into the hands of an innocent purchaser, equity on this ground alone will take jurisdiction to prevent such negotiation and transfer, if the note should be canceled and annulled for lack of consideration, or on account of duress.

Appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 21, 1920.

KNIGHT & MOHR, for appellant.

REYNOLDS & RECKHOW, for appellees.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

The appellee, Emma L. Johnson, in her own right and as next friend of Le Roy Johnson and Carl S. Johnson, legal heirs of Gustav D. Johnson, deceased, filed a bill in equity to enjoin the appellant, Carl Lind, from assigning or transferring or pledging a certain note and mortgage for the sum of $2,000, executed by herself and her deceased husband, Gustav D. Johnson, and praying to have said note and mortgage canceled and annulled. A temporary injunction was issued pursuant to the prayer of the bill, and this was made perpetual upon the final hearing. The court also decreed that the note and mortgage in question be canceled and annulled in accordance with the prayer of the bill, and appellant's appeal is prosecuted from this decree.

There appears to be very little controversy about

the facts in the case, and practically no dispute about the evidence bearing upon the execution of the note and mortgage in question, and the circumstances under which it was executed and delivered to the appellant.

The appellee and her husband, Gustav D. Johnson, at the time the note and mortgage were made, had been conducting a large rooming house in the City of Rockford, where fifteen or sixteen people were continuously housed, some for short periods of time, and some longer. The appellant roomed there and was a brother of the appellee. His room was on the top floor, or attic, and occupied by him alone. On the 8th day of July, 1918, according to the testimony of the appellee, the appellant came down stairs and said he had lost some money, and then went out doors and later came back with appellee's husband, and took him upstairs. Appellee went up later, and found them upstairs in appellant's room, with appellant's trunk open, and all of appellant's things on the bed. Appellant said he lost $4,000 in money. Appellee testified that this was the first knowledge she had that appellant had money about the house. Afterwards the appellant accused appellee's husband of taking the money and later on insisted that he should give a mortgage for half of the amount, which he claimed he lost, namely for $2,000. The day after appellant made his claim for the loss of money, he had officers come to the house, and, after that, to examine the appellee and the premises, and also appellee's husband, concerning the money which he claimed was taken from his trunk. And appellant was persistent in his demand on appellee's husband to make good his loss, or at least a part of the same, and especially on the day before the mortgage was executed, which was about the 11th day of July, 1918, when the appellant appeared to be very much excited, and insisted that he must have a mortgage, and that appellee's

husband was responsible for the house anyway. After a discussion about the matter, appellee's husband agreed to give the note and mortgage in question, and said to the appellant: "I will have a note drawn, and you go to the telephone and ask the police department not to come here any more"; and thereupon the appellant rang up the department, and told them his brother-in-law and he had settled. The next day the note and mortgage were drawn up by a notary public, and first signed and executed by her husband, and appellee testified that he thereupon compelled her to sign the same, contrary to her wishes. The giving of the note and mortgage, however, did not end the prosecution of the case. The State's Attorney sent for appellee's husband, and two police officers accompanied him to the office of the State's Attorney, and were in waiting at the door while he was being examined about the matter, and at the close of the examination by the State's Attorney that day, he was told that he must again appear for further examination the next evening at 7:30. This he avoided by committing suicide, which ended the matter. The appellee contends that the note and mortgage are void, because they are without consideration, also that they were executed under duress. There is no evidence from which a reasonable inference can be drawn that Johnson took any money from appellant's trunk, and there is no evidence that there was $4,000 in money in appellant's trunk outside of appellant's own assertion that he had it there, which was made at the time he claimed it was stolen. Appellant also claimed at that time that he had withdrawn this money from the bank, at the suggestion of appellee's husband, and placed it in his trunk, but no witness was called to show that appellant had such an amount on deposit, or had drawn out of any bank at any time, and no witness testified that he had any knowledge that the appellant ever had that amount of money. In this state of the rec-

ord, we are of opinion that the court was fully warranted in finding that the note and mortgage were without consideration. The evidence also tends to show that they were executed under duress. The reasonable inference from the evidence is that Johnson was impelled to execute the note and mortgage because he was in fear of an impending prosecution for the larceny of the money, which appellant claimed he had stolen. The disgrace and probably imprisonment likely to follow such a prosecution must have borne heavily on his mind, and that it did cause a tremendous distress and excitement in Johnson's mind is sufficiently evidenced by the fact that he finally committed suicide. If these notes were executed under the fear of a criminal prosecution, and in order to avoid such prosecution, this is a sufficient showing of duress to avoid them. Joyce on Defenses to Commercial Paper, sec. 112; *Bane v. Detrick*, 52 Ill. 19; *Henderson v. Palmer*, 71 Ill. 579. The appellant insists, however, that the defenses set up by the appellee against the note and mortgage could be made at law, and that therefore a court of equity should not take jurisdiction of the matter. Where a note is involved which is negotiable, and not due, and there is good reason to believe that it may be transferred or negotiated before maturity, and get into the hands of an innocent purchaser for value, a court of equity on this ground alone will take jurisdiction to prevent such transfer and negotiation, if the note ought to be canceled and annulled for lack of consideration, or on account of duress. Pomeroy's Equity Jurisprudence, sec. 685; Joyce on Defenses to Commercial Paper, sec. 106; *Kingsley v. Kingsley*, 130 Ill. App. 53.

For the reasons stated, we are of opinion that the decree canceling the note and mortgage in question was proper, and it is therefore affirmed.

*Decree affirmed.*